```
 1  BENJAMIN B. WAGNER
    United States Attorney
 2  KYLE REARDON
    Assistant United States Attorney
 3  501 I Street, Suite 10-100
    Sacramento, CA  95814
 4  (916) 554-2700
    (916) 554-2900 FAX
 5
 6
 7
```



**FILED**

SEP 27 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 2:12-CR-00092 MCE |
| Plaintiff, | ) |
| v. | ) **PLEA AGREEMENT** |
| JAMIR IMARI TATUM, | ) Date: September 27, 2012 |
| | ) Time: 9:00 a.m. |
| Defendant. | ) Court: Hon. Morrison C. England, Jr. |

I.

**INTRODUCTION**

A.  **Scope of Agreement**: The Indictment in this case charges the defendant with Sex Trafficking of a Minor, in violation of 18 U.S.C. § 1591(a)(1); Production of Child Pornography, in violation of 18 U.S.C. § 2251(a); and Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2).  The Indictment also contains a forfeiture allegation.  This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case.  This plea agreement is limited to the United

1

States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B. Court Not a Party:** The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, the Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement. If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.

### DEFENDANT'S OBLIGATIONS

**A. Guilty Pleas:** The defendant will plead guilty to Count Three of the Indictment charging him with a violation of 18 U.S.C. § 2252(a)(2), Distribution of Child Pornography. The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis attached hereto as Exhibit A are accurate.

**B. Financial Obligations:**

1. **Restitution**: The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. The defendant agrees to pay restitution as ordered by the

Court. By signing this Agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is **not** restricted to the amounts alleged in the specific count to which the defendant is pleading guilty.

   2. **Fine**: The defendant agrees to pay a fine as ordered by the Court.

   3. **Special Assessment**: The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this Plea Agreement is voidable by the government if he fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

   **C. Forfeiture**: The defendant agrees to forfeit to the United States voluntarily and immediately all of his right title and interest to any and all assets subject to forfeiture pursuant to 18 U.S.C. § 2253. Those assets include, but are not limited to, one MyTouch cell phone containing a micro SD card seized on February 22, 2012.

   The defendant agrees that the listed assets constitutes property involved in a violation of 18 U.S.C. § 2252.

   The defendant agrees to fully assist the government in the forfeiture of the listed assets and to take whatever steps are necessary to pass clear title to the United States. The defendant

shall not sell, transfer, convey, or otherwise dispose of any of his assets, including but not limited to, the above-listed asset.

The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant agrees to waive his right to notice of any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a claim in that forfeiture proceeding.

The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of assets. The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets in any proceeding. The defendant agrees to waive any jeopardy defense, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States, the States of California or its subdivisions.

The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to the forfeiture.

**D. Sex Registration/DNA Testing**: The defendant understands and agrees that as a consequence of his conviction for the crime to which he is pleading guilty, he will be required to register as a sex offender pursuant to the Sex Offender Registration and Notification Act (SORNA),[1] and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant

---

[1] See the Adam Walsh Child Protection and Safety Act of 2006 (Walsh Act), P.L. 109-248, enacted July 27, 2006.

4

to 18 U.S.C. § 2250. The defendant also understands and agrees that as a consequence of his conviction he will be ordered to submit to the collection of his DNA.

## III.

## THE GOVERNMENT'S OBLIGATIONS

**A. Recommendations:**

    **1. Incarceration Range:** The government will recommend that the defendant be sentenced at the bottom of the guideline range for his offense so long as the Court determines that the defendant's adjusted offense level is no less than the stipulation contained in this agreement.

    **2. Acceptance of Responsibility:** If the United States Probation Office determines that a three-level reduction in defendant's offense level for his full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the government will not oppose such a reduction and will so move under §3E1.1(b), so long as the defendant pleads guilty, meets with and assists the probation officer in the preparation of the pre-sentence report, is truthful and candid with the probation officer, and does not otherwise engage in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

## IV.

## ELEMENTS OF THE OFFENSE

**A. Elements of the Offense:** At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty:

5

1. **18 U.S.C. § 2252(a)(2), Distribution of Child Pornography:**

(a) the defendant knowingly distributed a visual depiction of a minor engaging in sexually explicit conduct;

(b) the distribution

i. of the visual depiction used any means or facility of interstate or foreign commerce or was in or affecting interstate commerce; or

ii. the visual depiction was mailed, shipped, or transported in interstate commerce;

(c) the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct;

(d) that such visual depiction was of a minor engaging in sexually explicit conduct;

(e) the defendant knew that the depiction was of such conduct; and

(f) the defendant knew that at least one of the persons engaged in sexually explicit conduct in the depiction was a minor.

V.

**MAXIMUM SENTENCE**

A. **Maximum Penalty:** The maximum sentence that the Court can impose for a violation of 18 U.S.C. § 2252(a)(2), Distribution of Child Pornography is no less than five years and up to 20 years imprisonment, a fine of $250,000, and life term of supervised release. By signing this Plea Agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is <u>not</u> restricted to the amounts

6

alleged in the specific counts to which the defendant is pleading guilty. The defendant further agrees that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

**B. Violations of Supervised Release:** The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years of imprisonment. The defendant also understand that if he commits any felony offense under Chapter 109A, 110, or 117, or section 1201 or 1591 of the United States Code, the Court shall revoke the term of supervised release and require the defendant to serve a term of no less than five years imprisonment under 18 U.S.C. § 3583(e)(3) without regard to the exceptions contained therein.

## VI.

### SENTENCING DETERMINATION

**A. Statutory Authority:** The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by United States v. Booker and United States v. Fanfan, 543 U.S. 220 (VI), 125 S.Ct. 738 (2005)) and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline

sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

  **B. Stipulations Affecting Guidelines Calculation:** The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

  1. **Base Offense Level**: The base offense level for the charge to which the defendant is pleading guilty is 22. See U.S.S.G. § 2G2.2(a)(1).

  2. **Specific Offense Characteristics:**

  (a) Five levels are added because the offense involved distribution for pecuniary gain. Id. at (b)(3)(A).

  (c) Five levels are added because the defendant engaged in a pattern of activity involving the sexual exploitation of a minor. Id. at (b)(5).

  (d) Two levels are added because the offense involved the use of a computer. Id. at (b)(6).

  (e) Two levels are added because the offense involved between 10 and 150 images. Id. at (b)(7)(A).

  3. **Total Offense Level**: The parties anticipate that the total offense level will be 36.

  4. **Chapter Three Adjustments**: <u>Acceptance of</u>

Responsibility: See Part III.B.2 above.

      **5. Adjusted Offense Level:** Given the stipulations above, the parties anticipate that the adjusted offense level will be 33.

      **6. Criminal History:** The parties agree that the applicable criminal history will be determined by the Court.

      **7. Departures:** None.

      **8. Departures or Other Enhancements or Reductions:** The parties stipulate and agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references. Both parties stipulate and agree not to move for, or argue in support of, any departure from the Sentencing Guidelines. The defendant reserves the right to seek a deviance or variance from the Sentencing Guidelines under <u>United States v. Booker</u>, 543 U.S. 220 (2005). The government reserves the right to oppose any deviance or variance and to argue for a sentence consistent with the terms of this plea agreement.

## VII.

### WAIVERS

**A. Waiver of Constitutional Rights:** The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

**B. Waiver of Appeal and Collateral Attack:** The defendant

understands that the law gives him a right to appeal his conviction and sentence. He agrees as part of his plea, however, to give up the right to appeal the conviction and the right to appeal any aspect of the sentence imposed in this case so long as his sentence is no longer than the top of the Sentencing Guidelines range determined by the Court consistent with the stipulations set forth above about the Sentencing Guidelines variables (that is, an adjusted offense level of 33 or below). He specifically gives up his right to appeal any order of restitution the Court may impose.

Regardless of the sentence he receives, the defendant also gives up any right he may have to bring a post-appeal attack on his conviction or his sentence. He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence.

Notwithstanding the agreement in Part III.A above that the government will move to dismiss counts against the defendant, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or reduce or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this Plea Agreement; and (3) to file any new charges that would otherwise be barred by this Plea Agreement. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office. By signing this Plea Agreement, the defendant agrees to waive any objections, motions, and defenses he might have to the government's decision. In particular, he agrees not to raise any objections based on the passage of time with

respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

**C. Waiver of Attorneys' Fees and Costs:** The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this Plea Agreement and any charges previously dismissed).

## VIII.
### ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.
### APPROVALS AND SIGNATURES

**A. Defense Counsel:** I have read this Plea Agreement and have discussed it fully with my client. The Plea Agreement accurately

///
///
///
///
///

and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this Plea Agreement.

Dated: 9/27/12

BENJAMIN D. GALLOWAY
Attorney for the Defendant

B. **Defendant:** I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. In addition, no one has threatened or forced me in any way to enter into this Plea Agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 9/27/12

JAMIR IMARI TATUM
Defendant

C. **Attorney for United States:** I accept and agree to this Plea Agreement on behalf of the government.

Dated: 9/27/12

BENJAMIN B. WAGNER
United States Attorney

By: KYLE REARDON
Assistant U.S. Attorney

12

**EXHIBIT "A"**

**Factual Basis for Plea**

The parties agree that if this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

In January 2012, the defendant met the 14-year-old victim (AC) outside of her house. The defendant knew that AC was a minor. He started a sexual relationship with her shortly after they met. On or about January 23, 2012, the defendant took AC to a motel in Sacramento, California where he took several photographs of AC engaged in sexually explicit conduct (child pornography) using his LG MyTouch cell phone camera. In these photographs, AC is posed on her side with her genitalia displayed. LG cell phones are produced in South Korea with components from throughout Asia.

On February 20, 2012, AC told her mother that she was going outside. She then got into a car with the defendant and two other unidentified adults and drove away. On the night of February 20, 2012, she stayed at a house with the defendant. On this night, the defendant recorded a 30-second cell phone video with the LG MyTouch phone showing himself having vaginal sex with AC. This video is child pornography.

On February 21, 2012, agents with the Sacramento Innocence Lost Task Force located myredbook.com advertisements linked to the defendant's phone number. These advertisements were for the prostitution services of AC in Stockton, California, and contained three of the sexually explicit images taken in Sacramento in January. The defendant assisted in the creation of this advertisement and distributed these images of child pornography through Myredbook.com.

By distributing these images through Myredbook.com, the defendant hoped to profit by being AC's pimp. Myredbook.com is an internet-based escort service. The internet is a means and instrumentality of interstate commerce and its use is in and affecting interstate commerce.

Two updated advertisement for AC containing the sexually explicit images were found later on February 21, 2012. Task force officers called the phone number listed on the advertisement (previously identified as belonging to the defendant), spoke with AC, and made a date to meet her on a street corner in Stockton. A date is a term that is used in the prostitution industry that means an exchange of sex for money. There were several calls and text messages sent back and forth between the Task Force officer and the cell phone listed in AC's advertisement. During one call from the Task Force, the call went to voicemail and the outgoing message said, "This is Jamir." During another call, AC was overheard speaking to the defendant, asking him if it was okay to do the date at a local motel.

When officers arrived at the date, they saw AC on the street corner; the defendant was standing approximately 50 meters away. When officers arrived and apprehended AC, the defendant took off running. He surrendered approximately 15 minutes later after police dogs were brought into the chase.

AC was immediately detained and a LG MyTouch cell phone was taken from her boot. This had been given to her by the defendant. On this phone were the sexually-explicit video, as well as the images that were part of the myredbook.com advertisement.

In a statement to officers at the scene, AC admitted to

prostituting for the defendant and giving him the money that she had made from dates during the past two days. She also identified herself in the photographs and videos (as well as the defendant), and said that the defendant had taken the images and video with the MyTouch cell phone.

Text messages recovered from the defendant's phone showed the defendant to be a pimp. In a message dated February 15, 2012, the defendant referenced AC during a conversation with an unknown individual. In that text message, the defendant wrote, "Aye bra I'm in stockton n I got ths hoebitch n south sac is u n a position to go rit nw." A few days later, on February 18, 2012, the defendant texted an unknown individual and said, "Aye bra I was trana get this hoe bitch frm Stockton," followed a few minutes with, " N da north n I ain't gon lie I ain't got a dolla but I was gon have her bust a date bra its gud fasho."

On February 19, 2012, the defendant sent a text to an unknown female offering to pay her $50 if she would drive him to South Sacramento so that he could pick up AC. This message read, "Let me give u 50 to take me to get ths hoe bitch n sac." In messages with AC on February 21, 2012, the defendant tells AC to ask "50 or 40" for a date. He also sends her a text message that reads, "that betta b a trick."